MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2026 ME 82
Docket:       Lin-25-49
Argued:       November 14, 2025
Decided:      August 6, 2026

Panel:        STANFILL, C.J., and MEAD, CONNORS, LAWRENCE, DOUGLAS, and LIPEZ, JJ.

STATE OF MAINE

v.

NATHAN LEE

LAWRENCE, J.

[¶1]  Nathan Lee appeals from a judgment of conviction on one count of domestic violence aggravated assault (Class B) and one count of domestic violence criminal threatening with a dangerous weapon (Class C) entered by the trial court (Lincoln County, *Billings, J.*) after a jury trial.  Lee argues that we must vacate his conviction because of two instances of prosecutorial error during the trial.  First, Lee contends that the State's attempt to lay a foundation for a law enforcement witness's testimony related to Lee's credibility was improper and prejudicial.  Second, he argues that the State impermissibly commented on the credibility of a witness during closing arguments.  Although both instances were plain errors, neither error affected Lee's substantial rights nor deprived him of a fair trial.  We therefore affirm the judgment of conviction.

## I. BACKGROUND

[¶2] When viewing the evidence in the light most favorable to the verdict, the jury could have rationally found the following facts beyond a reasonable doubt. *State v. Gervais*, 2025 ME 27, ¶ 2, 334 A.3d 645.

[¶3] Lee's convictions were based on two separate incidents, both involving the same victim, his daughter, and both of which occurred at the family's home with no other witnesses present.

[¶4] In the spring of 2018, Lee and the victim came back to their home after a sports practice and got into a heated argument. While the two were arguing, Lee went into his room and came back out with his gun. Lee proceeded to point the gun at the victim and said if the victim really did not care, he could end it all here and now. With the gun still pointed at the victim, Lee clicked the trigger and stated that it was a good thing the gun was not loaded.

[¶5] In a separate incident in early 2020, Lee and the victim were again arguing in their home when Lee started backing the victim up into the dining room door. The victim attempted to spit on Lee while he was backing her toward the door. After the victim spit, Lee pinned the victim against the door with his hand around her throat. Lee squeezed the victim's throat until she lost

consciousness.  The victim woke up on the couch with ice packs on her neck. This incident left marks on the victim's neck.

[¶6]  Based on Lee's conduct in 2018 and 2020, the State initially charged Lee by criminal complaint, and he was subsequently indicted on two counts: domestic violence aggravated assault (Class B), 17-A M.R.S. § 208-D(1)(D) (2020)[1] (Count 1); and domestic violence criminal threatening with a dangerous weapon (Class C), 17-A M.R.S. §§ 209-A(1)(A), 1252(4) (2018)[2] (Count 2).

[¶7]  The court held a two-day jury trial in October 2024.  At trial, the State presented four witnesses: the victim's mother (Lee's ex-wife), the victim's uncle, the investigating detective sergeant, and the victim.  The victim was the only witness who testified about the specific incidents underlying the charged conduct; the other witnesses testified to the family's dynamics and the circumstances surrounding the family members' relationships.

---

[1]  Title 17-A M.R.S. § 208-D has since been amended, though not in any way that affects this appeal. *See, e.g.*, P.L. 2023, ch. 465, § 4 (effective June 23, 2023) (codified at 17-A M.R.S. § 208-D (2026)).

[2]  Title 17-A M.R.S. § 209-A has since been amended, though not in any way that affects this appeal. *See, e.g.*, P.L. 2023, ch. 465, § 7 (effective June 29, 2023) (codified at 17-A M.R.S. § 209-A (2026)).  Title 17-A M.R.S. § 1252 has since been repealed and replaced with 17-A M.R.S. § 1604 (2026).  *See* P.L. 2019, ch. 113, §§ A-1, A-2 (emergency effective May 16, 2019) (codified at 17-A M.R.S. § 1604 (2026)). The language of section 1252 was substantially similar to the current statute and therefore the repeal and replacement of it does not impact this appeal.  *Compare* 17-A M.R.S. 1252(4) (2018), *with* 17-A M.R.S. § 1604(5)(A) (2026).

4

[¶8] During direct examination of the detective sergeant, the prosecutor began by asking about his professional background and training. The prosecutor asked him whether he had any special interview training and whether that training taught him to assess credibility during an interview. The detective sergeant testified that he is trained in forensic interviewing and that he was taught to look for certain signs to help determine the veracity of an interviewee's statements. Later in the detective sergeant's testimony, the prosecutor began to formulate a question, stating "we talked about some of the training you have and some of the things you look for regarding interviews for credibility purposes. And so you've had an opportunity to view --." The prosecutor did not have the chance to fully ask the question, however, because Lee's counsel interjected, and counsel went to the bench for a sidebar discussion. At sidebar, the prosecutor stated that he was going to ask "based on the [detective sergeant's] training, education and experience, did he find her credible?"[3] Defense counsel's response is indiscernible from the record; however, after the sidebar concluded, the prosecutor did not continue with the line of questioning and had no further questions for the detective sergeant.

---

[3] As we explain below, *see infra* ¶¶ 14-15, the parties dispute to whom the prosecutor was referring.

[¶9]  Lee presented two witnesses for impeachment purposes and to testify generally about interactions between Lee and the victim.  No physical evidence was introduced by either party, leaving witness testimony as the only evidence for the jury to consider.

[¶10]  During closing arguments, the prosecutor discussed the testimony of the victim's mother and started by saying, "She was -- she -- she was pretty, I -- I -- I thought, honest."  He then went on to summarize the testimony of the victim's mother based on facts that were in evidence to suggest that the victim's mother was in fact credible.  Lee did not object to the prosecutor's closing argument.

[¶11]  After jury instructions and deliberations, the jury returned guilty verdicts on Count 1 and Count 2.  At sentencing, the court sentenced Lee to seven years of imprisonment with all but two years suspended and three years of probation on Count 1, and two years of imprisonment on Count 2 to be served concurrently with the sentence on Count 1.  Lee timely appealed.  *See* 15 M.R.S. § 2115 (2026); M.R. App. P. 2B(b)(1).

## II. DISCUSSION

[¶12]  Lee argues that the State committed prosecutorial error during its direct examination of the detective sergeant and during its closing argument.[4] Lee did not object to the State's closing argument and thus we review the lone unobjected-to statement for obvious error.  *State v. Moulton*, 2026 ME 6, ¶¶ 14, 27, 353 A.3d 919.  Although Lee did eventually object to the State's questioning of the detective sergeant, he failed to request a curative instruction or move for a mistrial, requiring us to apply an obvious-error standard of review.  *See State v. Hinds*, 485 A.2d 231, 235 (Me. 1984) ("[W]here the defendant at trial fails to move for a mistrial or argue that the prejudicial effect upon the jury is irreparable, he must be taken to have acquiesced in whatever measures the trial judge takes on his own.  In such a case, this Court will vacate a conviction on appeal only for obvious error affecting substantial rights." (citation and quotation marks omitted)).

[¶13]  The obvious-error standard requires the defendant to "show that there is (1) an error, (2) that is plain, and (3) that affects substantial rights."

---

[4]  Lee does not allege that the prosecutor's conduct was in bad faith and instead focuses on the impact that the conduct had on his right to a fair trial.  Therefore, our review focuses on Lee's claim of prosecutorial error and an assessment of the impact of the alleged error on Lee's due process rights.  *See State v. Moulton*, 2026 ME 6, n.1, 353 A.3d 919; *see also State v. White*, 2022 ME 54, n.9, 285 A.3d 262 (utilizing the term "error" instead of "misconduct" because our review of the claimed error focused on the due process rights of the defendant rather than the subjective intent of the prosecutor).

*State v. Pratt*, 2020 ME 141, ¶ 14, 243 A.3d 469 (quotation marks omitted). An error affects substantial rights if it "was sufficiently prejudicial to have affected the outcome of the proceeding." *Id.* (quotation marks omitted). "Even if these three conditions are met, we will set aside a jury's verdict only if we conclude that (4) the error seriously affects the fairness and integrity or public reputation of judicial proceedings." *State v. Dolloff*, 2012 ME 130, ¶ 35, 58 A.3d 1032 (quotation marks omitted). When an appellant claims that there are multiple instances of prosecutorial error, we will first examine each instance individually to determine whether error occurred, "and, if there was error, we will then review the State's comments as a whole, examining the incidents of error both alone and cumulatively." *State v. Warner*, 2023 ME 55, ¶ 14, 301 A.3d 763 (quotation marks omitted).

## A.    Direct Examination of the Detective Sergeant

[¶14] Lee argues that during the detective sergeant's direct examination, the prosecutor improperly laid a foundation and attempted to elicit inadmissible testimony—the detective sergeant's opinion of Lee's credibility, specifically regarding Lee's denials when confronted with the allegations against him. Although Lee acknowledges that after his objection was discussed at sidebar, the line of questioning did not continue, he contends that it

prejudicially suggested that the detective sergeant did not find Lee credible and that suggestion was reinforced by the State's decision to charge Lee, leading to his criminal trial.

[¶15]  In response, the State contends that the partially asked question did not specify any specific person and thus, the jury could not have known whom the prosecutor was going to ask about.[5]  The State nonetheless conceded at oral argument that the prosecutor's partially formulated question to the detective sergeant constituted prosecutorial error.  It nevertheless asserts that the error did not affect Lee's substantial rights because the ultimate question about credibility was properly objected to, the line of questioning never went any further, and the jury never heard anything after the beginning of the question.

[¶16]  Regardless of whose credibility the prosecutor was purporting to question, the questioning was improper.  A prosecutor's attempt to elicit inadmissible testimony is improper prosecutorial conduct. *Pratt*, 2020 ME 141, ¶ 15, 243 A.3d 469.  There are several instances in our jurisprudence that exemplify the State's use of an improper line of questioning to elicit

---

[5] It appears from the record, however, that the prosecutor was about to ask whether the detective sergeant, having viewed the victim's forensic interview, found the victim to be credible.  While counsel was at sidebar, the prosecutor stated that he was going to ask if "based on [the detective sergeant's] training, education, and experience, did he find *her* credible?"  (Emphasis added.)

inadmissible testimony. *See, e.g.*, *State v. Sweeney*, 2004 ME 123, ¶ 11, 861 A.2d 43 (stating that it is improper for a prosecutor to ask one witness if another witness is credible); *Pratt*, 2020 ME 141, ¶ 16, 243 A.3d 469 (determining that the State's line of questioning about irrelevant and prejudicial testimony was plain error); *State v. Gaudette*, 431 A.2d 31, 34-35 (Me. 1981) (vacating a judgment of conviction after the State elicited inadmissible hearsay statements made by a judge whose credibility the jury was unlikely to question). This includes asking a witness to opine on the credibility of another witness, because that determination rests solely within the province of the fact finder. *Sweeney*, 2004 ME 123, ¶ 11, 861 A.2d 43; *State v. Tripp*, 634 A.2d 1318, 1320 (Me. 1994); *State v. Steen*, 623 A.2d 146, 149 (Me. 1993); *see also Watson v. State*, 2020 ME 51, ¶ 27 n.5, 230 A.3d 6 (explaining that law enforcement witnesses cannot give a personal opinion on the credibility of a victim when testifying at trial because it amounts to impermissible witness vouching).

[¶17] At trial in this case, the State attempted to lay a foundation for the detective sergeant to opine on the victim's credibility by asking about his training in forensic interviewing followed by an attempt to ask about the credibility of the victim. This amounts to plain error. The victim was the only witness who provided testimony regarding the events underlying Lee's

charges. The State did not introduce any physical evidence to corroborate the victim's allegations. The prosecutor's effort to have the detective sergeant opine about the credibility of the key witness in the State's case invades the province of the jury as the sole determiner of the facts and of witness credibility. *See Sweeney*, 2004 ME 123, ¶ 11, 861 A.2d 43; *Steen*, 623 A.2d at 149. It is an equally impermissible invasion of the province of the jury to ask a witness about Lee's credibility, because if Lee elected to testify, his credibility is for their consideration alone. *Cf. Tripp*, 634 A.2d at 1320 (noting that it is impermissible to question one witness about the credibility of another when the jury heard both witnesses' testimony and could come to its own conclusion).

[¶18] Despite this error, we conclude that Lee's substantial rights were not affected. Contrary to Lee's assertion, the answer to the State's improper question was never before the jury, either expressly or impliedly. The prosecutor never asked the full question, nor did he continue questioning the witness on direct examination after counsel convened at sidebar. Therefore, this partially asked and wholly unanswered question did not affect the outcome

of the proceeding such that it impacted Lee's substantial rights, even if it was a plain error. Thus, there was no obvious error.

## B.   Statements During Closing Argument

[¶19]   Lee argues that the prosecutor also erred during closing arguments by vouching for a witness when he stated that he thought that the victim's mother was "pretty honest." The State conceded at oral argument that this statement was plain error. The State contends that, despite the error, given the totality of the prosecutor's statements during closing argument, the lone statement did not affect Lee's substantial rights because the prosecutor went on to recite the actual testimony of the victim's mother, and the victim's mother was not an eyewitness to either incident of charged conduct. The State also points out that the prosecutor reminded the jury several times of its role in determining the credibility of the witnesses and that the court's instructions made it clear that the closing arguments of counsel were not evidence. Thus, the State maintains, the prosecutor's error did not affect Lee's substantial rights.

[¶20]   Our case law is clear that during closing arguments, prosecutors cannot offer to the jury their personal opinion about the credibility of a witness. *See State v. Williams*, 2012 ME 63, ¶ 46, 52 A.3d 911; *State v. Schooley*, 2025 ME

84, ¶ 35, 345 A.3d 78; *State v. DesRosiers*, 2024 ME 77, ¶ 38, 327 A.3d 64; *see also* M.R. Prof. Conduct 3.4(e) ("A lawyer shall not . . . . state a personal opinion as to . . . the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused").  Even though not every use of the phrase "I think" is problematic, a prosecutor utilizing the phrase "I think" in connection with proffering a personal opinion is improper.  *See Dolloff*, 2012 ME 130, ¶ 57 n.16, 58 A.3d 1032; *see also State v. Robbins*, 2019 ME 138, ¶ 10, 215 A.3d 788 (reaffirming that the prosecutor's vouching for a witness or injecting a personal opinion regarding the credibility of a witness is almost always misconduct).  If an attorney simply suggests to the jury based on facts in evidence that a witness should be accepted as truthful, that argument is proper.  *Schooley*, 2025 ME 84, ¶ 35, 345 A.3d 78; *State v. Hassan*, 2013 ME 98, ¶ 33, 82 A.3d 86.  Thus, we must determine "whether the prosecutor's comments improperly expressed a personal opinion."  *Schooley*, 2025 ME 84, ¶ 35, 345 A.3d 78.

[¶21]  Here, the prosecutor's statement did improperly express a personal opinion.  He began his summary of the victim's mother's testimony stating that he thought that the victim's mother was pretty honest.  On the one hand, so long as a "prosecutor's comment is tied to the evidence, there is nothing wrong with saying" that the evidence presented leads to the conclusion

that a witness's testimony was accurate. *DesRosiers*, 2024 ME 77, ¶ 37, 327 A.3d 64. On the other hand, a statement that solely opines on the credibility of a witness—which is precisely what happened here—is improper witness vouching. *See Schooley*, 2025 ME 84, ¶ 35, 345 A.3d 78. We recognize that prosecutors must balance competing obligations to not exceed professional ethical bounds and to advocate zealously on behalf of the State, which demands that they carefully walk a fine line to ensure that each defendant receives a fair trial. *Dolloff*, 2012 ME 130, ¶¶ 40-41, 58 A.3d 1032. There is no question that the prosecutor's statement in this case strayed from that line.[6] Even though the prosecutor later moved on to summarize the mother's testimony to the jury based on facts that were in evidence, which was proper, *see Hassan*, 2013 ME

---

[6] To assist attorneys practicing in federal court to avoid straying from the line during opening statements and closing arguments, the United States District Court for the District of Maine compiled a comprehensive summary from First Circuit Court of Appeals jurisprudence and local rules regarding what attorneys may or may not say in a criminal trial. *Summary of Principles Regarding Opening Statements and Closing Arguments from the First Circuit Authority and Local Rules*, United States District Court for the District of Maine, (Updated Jan. 2023), https://www.med.uscourts.gov/sites/med/files/OpeningAndClosing.pdf [https://perma.cc/RZW8-U2AB]. We have had the opportunity to discuss many instances of prosecutorial error in our case law, *White*, 2022 ME 54, ¶ 39 n.14, 285 A.3d 262 (collecting cases), and many of the principles addressed in those cases are organized topically and stated pithily in this federal guidance.

98, ¶ 33, 82 A.3d 86, the prosecutor's personal opinion that the mother was honest was plain error.

[¶22]   This error did not, however, affect Lee's substantial rights. Although the State's evidence consisted only of witness testimony, the victim's mother did not provide any testimony regarding the incidents underlying the charged conduct.  She provided testimony about the family dynamics, how Lee interacted with the victim at home, and what the relationship between Lee and the victim was like.  The victim's mother also testified about the circumstances under which the victim disclosed the charged conduct but did not testify about what the victim said occurred.  Thus, to convict Lee, the jury did not have to find the victim's mother credible.

[¶23]  Moreover, Lee did not object to the prosecutor's statement during closing.[7]   Thus, this is not the rare case in which we will find that a lone

---

[7] In some instances, defense counsel may be reluctant to object during closing arguments out of fear that an objection would "draw the jury's attention to an adverse statement that, without an objection, would receive less attention from the jury." *State v. Daluz*, 2016 ME 102, ¶ 39 n.11, 143 A.3d 800; *Dolloff*, 2012 ME 130, ¶ 39 n.11, 58 A.3d 1032 (suggesting that "counsel may request a side bar conference, may note a continuing objection to a repeated problem, or may wait a short time in order not to throw the skunk into the jury box" to allow for the presiding judge to eliminate or minimize any prejudicial effect of alleged errors).  In this respect, the trial court plays a pivotal role "in controlling prosecutorial misconduct [and error] and in lessening the impact of improper conduct."  Robert W. Clifford, *Identifying & Preventing Improper Prosecutorial Comment in Closing Argument*, 51 Me. L. Rev. 241, 265 (1999).  Prompt action by the trial court when there is a plain error, either in the form of corrective instructions or admonition to counsel, can not only discourage improper conduct but also keep the trial court's record clean from errors impacting the fairness of a defendant's trial.  *See State v. Maderios*, 2016 ME 155, ¶¶ 20-21, 21 n.8, 149 A.3d 1145 ("Had the trial

statement regarding the credibility of a witness who did not testify to any of the underlying conduct, followed by a proper summary of the facts in evidence, created a reasonable probability that it affected the outcome of the proceeding. *Schooley*, 2025 ME 84, ¶ 33, 345 A.3d 78 ("When a prosecutor's statement is not sufficient to draw an objection, particularly when viewed in the overall context of the trial, that statement will rarely be found to have created a reasonable probability that it affected the outcome of the proceeding.").  Therefore, even though the prosecutor stumbled by asserting a personal opinion about the credibility of a witness, that misstep did not affect Lee's substantial rights, and thus there is no obvious error.  *See Dolloff*, 2012 ME 130, ¶ 38, 58 A.3d 1032.

## C.     **Cumulative Effect of Prosecutorial Errors**

[¶24]  Finally, the record does not demonstrate that the cumulative effect of the prosecutor's errors resulted in an unfair trial depriving Lee of due process.  *See* U.S. Cont. amend. XIV, § 1; Me. Const. art. I, § 6-A;  *State v. Fahnley*, 2015 ME 82, ¶ 41, 119 A.3d 727; *Moulton*, 2026 ME 6, ¶ 31, 353 A.3d 919.

[¶25]  The court instructed the jury both before opening statements and before closing arguments that statements of counsel are not evidence for the jury to consider.  Before closing arguments, the court provided thorough

---

court in this case not diligently and proactively protected [the defendant]'s right to a fair trial, our result might have been different.").

instructions about the jury's role in determining which testimony it finds accurate and trustworthy and that the jury is the judge of whether to believe a witness and to determine how important the witness's testimony is. It also again reminded the jury that statements and arguments of counsel are not evidence that the jury can consider. Moreover, the prosecutor himself emphasized the role of the jury during his closing argument, stating, "I'll leave it to you to decide on the credibility of the witnesses." The court's instructions and the prosecutor's statement repeatedly instructed the jury that only it could determine whether a witness was credible based on evidence, which did not include statements of counsel or sustained objections. *See State v. Tarbox*, 2017 ME 71, ¶ 15, 158 A.3d 957 (demonstrating that proper jury instructions can have the effect of removing any taint caused by a prosecutor's erroneous statement during closing arguments); *Schooley*, 2025 ME 84, ¶ 40, 345 A.3d 78. Therefore, we conclude that any prosecutorial error, individually or cumulatively, did not affect the jury's verdict such that Lee was deprived of a fair trial.

[¶26] It is worth noting that the prosecutorial errors in this case are not insubstantial. To the contrary, in cases where witness credibility is the cornerstone of the State's case, on different facts, errors such as the ones in this

case could require vacatur of a defendant's conviction. Prosecutors have a unique role and are "obligated 'to see that the defendant is accorded procedural justice and that guilt is decided upon the basis of sufficient evidence.'" *State v. Hanscom*, 2016 ME 184, ¶ 18, 152 A.3d 632 (quoting M.R. Prof. Conduct 3.8 cmt. (1)). We again remind prosecutors of their "special responsibility to help ensure a fair trial and avoid striking any foul blows." *Moulton*, 2026 ME 6, ¶ 33, 353 A.3d 919. Attempting to lay a foundation to elicit inadmissible testimony and commenting on the credibility of a witness in closing argument are foul blows that must be avoided.

### III. CONCLUSION

[¶27] In sum, "we have repeatedly reminded prosecutors of the important responsibilities that they bear as representatives of the State of Maine and have chastised them for failing to live up to those responsibilities." *State v. White*, 2022 ME 54, ¶ 39, 285 A.3d 262. While we affirm Lee's conviction, we nevertheless continue to emphasize that prosecutors must remain vigilant to avoid straying from the line into prejudicial error.

The entry is:

> Judgment affirmed.

Kurt C. Peterson, Esq. (orally), McKee Morgan, LLC P.A., Augusta, for appellant Nathan Lee

Natasha Irving, District Attorney, and Kent G. Murdick, Asst. Dist. Atty. (orally), Lincoln County District Attorney's Office, Wiscasset, for appellee State of Maine

Lincoln County Unified Criminal Docket docket number CR-2023-105
FOR CLERK REFERENCE ONLY